IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE CHOWNS GROUP, LLC,** *Plaintiff,* v. **LIBERTY MUTUAL INSURANCE COMPANY,** *Defendant*. | **CIVIL ACTION NO. 2:22-cv-02275-MMB** |

### MEMORANDUM RE MOTION TO DISMISS

**BAYLSON, J.**                                                                                                **OCTOBER 7, 2022**

### I.    INTRODUCTION

This is a contracts case involving claims for breach of contract, promissory estoppel, and a claim under a Pennsylvania "bad faith" insurance law. All claims stem from a United States Navy-financed construction project to build a new high school on the Marine Corps Base in Quantico, Virginia. Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is an insurance company that issued the surety bond purportedly guaranteeing payment to subcontractors on the Navy project, and Plaintiff The Chowns Group, LLC ("Chowns Group") is a subcontractor that supplied steel and other services for the project. Chowns Group alleges it was stiffed by the project's prime contractor and is suing the surety bond issuer for payment. Liberty Mutual now seeks to dismiss all claims under F.R.C.P. 12(b)(6) and F.R.C.P. 12(b)(3) by asserting three arguments: (1) Plaintiff's common law contract claims are time barred by a one-year statute of limitations; (2) Plaintiff's Pennsylvania "bad faith" claim is inapplicable to surety bond contracts and otherwise preempted by federal statute; and (3) under the federal statute governing surety bonds for public works, the Eastern District of Pennsylvania is an improper venue.

1

Because this Court finds that venue is improper, the matter is ordered transferred in the interest of justice to the Eastern District of Virginia and the Court will not rule on the other elements of Liberty Mutual's Motion.

## II. JURISDICTION

This Court has subject-matter jurisdiction to hear this case under both 28 U.S.C. § 1332 diversity jurisdiction and 28 U.S.C. § 1331 federal question jurisdiction, including supplemental jurisdiction regarding the state claim under 28 U.S.C. § 1367.

## III. FACTS AND PROCEDURAL HISTORY

This case revolves around the federal public works statute called The Miller Act, 40 U.S.C. §§ 3131-3134. The Miller Act, passed by Congress in 1935, is a federal statute that requires contractors who win bids on public projects worth over $100,000—the 'prime contractors,'—to furnish payment and performance protection through surety bonds. The sureties, usually insurance companies, will issue the bond, which promises to protect subcontractors from a prime contractor's failure to pay for labor and materials. To issue this bond pursuant to the statute, the surety and prime contractor sign a bond agreement pursuant to the Miller Act using a standard form contract that cites the Miller Act. As a remedy, the Miller Act establishes the right of a subcontractor to bring a civil action on the bond if the prime contractor refuses to pay them—in essence, the Miller Act provides the subcontractor a right of action against the surety even though the subcontractor is not in privity with the surety. See U.S. ex rel. Liberty Mechanical Servs., Inc. v. North American Specialty Ins. Co., 2 F.Supp.3d 610, 613-14 (E.D. Pa. 2014) (Restrepo, J.).

Chowns Group's common law claims, which are subject to the conditions and limitations of the Miller Act, arise from a contractual conflict with their prime contractor on the Navy

project.  Chowns Group alleges they contracted with the prime contractor in January 2017 to supply and erect steel at the job site in Quantico.  Chowns Group alleges that it fulfilled its side of the contract and delivered and erected steel at the project site until April 2020, when it was forced to cease operations due to pandemic measures issued by the Governor of Pennsylvania.  On April 28, 2020 the prime contractor terminated its contract with Chowns Group for default and failure to cure.  Chowns Group attempted to negotiate payment with the prime contractor to no avail.

Chowns Group then filed the original complaint for this action in Pennsylvania state court on May 16, 2022, a little over two years after contract termination.  In its complaint, Chowns Group makes a number of allegations, including that it had not received a copy of the Miller Act bond agreement until after it filed its complaint in this case; that the prime contractor intentionally delayed the project to cover up unexpected construction issues, which resulted in further costs to Chowns Group; that the prime contractor made demands on Chowns Group that went beyond the scope of the subcontract; that the prime contractor threatened Chowns Group for notifying government representatives of construction deficiencies that the prime contractor was concealing; that the prime contractor committed fraud against the government and Chowns Group; the prime contractor falsely told the U.S. Navy that Chowns Group was responsible for structural deficiencies; and that the prime contractor knew that Chowns Group was a "small business" and was susceptible to financial pressure.  These were all reasons for why, according to Chowns Group, the prime contractor wrongfully terminated the subcontract and for which Chowns Group is entitled to damages.

Following Chowns Group's filing of its complaint, Liberty Mutual filed a notice of removal on June 9, 2022 and the case was removed to this Court.  Liberty Mutual filed this

Motion to Dismiss on June 16, 2022. Chowns Group filed its Response in Opposition on June 30, 2022 and Liberty Mutual followed with its Reply on July 6, 2022.

IV.     **DISCUSSION**

    **A. Venue is Improper Under the Miller Act**

In deciding this Motion, the Court is inclined to address venue as a preliminary matter before considering the merits of Defendant's other arguments, in large part because improper venue could constitute reversible error. U.S. v. Auernheimer, 748 F.3d 525, 538 (3d Cir. 2014) ("[W]e are skeptical that venue errors are susceptible to harmless error analysis"); U.S. for Use and Benefit of Harvey Gulf Intern. Marine, Inc. v. Maryland Cas. Co., 573 F.2d 245 (5th Cir. 1978) (reversing and remanding Miller Act case for improper venue even after culmination of a trial); see also Wyrough & Loser, Inc. v. Pelmor Labs., Inc., 376 F.2d 543, 547 (3d Cir. 1967) ("[P]reliminary matters such as defective service, personal jurisdiction and venue should be raised and disposed of before the court considers the merits or quasimerits of a controversy").

The Miller Act has a venue provision that states, "A civil action brought under this subsection must be brought (1) in the name of the United States for the use of the person bringing the action; and (2) in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3). Neither side argues that a forum selection clause exists here, so no determination as to waiver is necessary. See U.S. ex rel. River Front Recycling and Aggregate, LLC v. Kallidus Techs., Inc., No. 18-9141, 2019 WL 2082948, at *7 (D.N.J. May 13, 2019) (the Miller Act's venue requirement is subject to waiver). In this case, the Miller Act's venue provision is treated as mandatory. Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 192

(4th Cir. 1998) (Miller Act has a "mandatory venue provision"); In re VMS Secs Litig., 21 F.3d 139, 144 (7th Cir. 1994) (as opposed to permissive).

Liberty Mutual argues in its Motion that because the jobsite of the Navy project was located in Quantico, Virginia, the case should be dismissed for improper venue or, if not dismissed, transferred to the Eastern District of Virginia. Chowns Group argues that because the steel used on the project site was fabricated at its place of business in Montgomery County, Pennsylvania, the contract was "performed and executed" in the Eastern District of Pennsylvania, and so this Court is an appropriate forum under the venue provision.

The Third Circuit has yet to interpret "performed and executed" in the Miller Act's venue provision. The statutory language is ambiguous and cannot be construed on its plain reading as being narrow (a single district is proper) or broad (many districts are proper)—"any district court" could just as well qualify "the United States District Court" as it could qualify "in which the contract was to be performed and executed."

The U.S. Supreme Court ruled on a Miller Act venue conflict in F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116 (1974), albeit a superseded version of the statute.[1] In F.D. Rich the Court held that even where a shipment of materials for a federal housing project was delivered to South Carolina, because California was where the contract was executed and where the project was located, the proper venue under the Miller Act was in California, not South Carolina. F.D. Rich Co., Inc., 417 U.S. at 124-26. Additionally, a growing number of district courts, including from within the Third Circuit, have held that even where a larger percentage of work for a public project has occurred elsewhere, the correct district to bring

---

[1] The version from F.D. Rich, superseded in 2002, included "and not elsewhere" after "performed and executed." F.D. Rich Co., Inc., 417 at 124. This Court is hesitant to apply an interpretation of a superseded statute. But a plain reading comparison of the two versions reveals them to be equally ambiguous, and so this Court finds the case persuasive.

5

a cause of action under the Miller Act is where the government jobsite is actually located. Butch-Kavitz, Inc. v. Mar-Paul Co. Inc., No. , 2015 WL 7736761, at *14 (M.D. Pa. Dec. 1, 2015);  ECSI Int'l, Inc. v. Lockheed Martin Global Training and Logistics, No. 12-1417, 2012 WL 13034151, at *1-3 (D.N.J. Dec. 3, 2012); U.S. for Use and Benefit of Straightline Corp. v. CNA Sur., 411 F.Supp.2d 584 (W.D. Pa. 2006) (Hardiman, J.); see also U.S. on behalf of Salt Energy, LLC v. Lexon Ins. Co., No. 19-20473, 2019 WL 3842290 (S.D. Fla. Aug. 14, 2019); U.S. v. Travelers Cas. & Sur. Co., No. 14-1819, 2015 WL 4389568 (D.P.R. July 15, 2015); U.S. ex rel. Norshield Corp. v. E.C. Scarborough, 620 F.Supp.2d 1292 (M.D. Ala. 2009); ESL Power Sys. v. Elec. Maintenance & Const., Inc., No. 05-00478, 2005 WL 8156505 (C.D. Cal. Sept. 20, 2005); U.S. for Use and Benefit of Caswell Equipment Co., Inc. v. Fidelity and Deposit Co. of Maryland, 494 F.Supp. 354 (D. Minn. 1980).

Likewise, a number of circuit courts have held that Congress intended the venue provision to be strict and narrow, so as to provide some protection for Miller Act defendants from litigating cases in multiple districts related to the same public project.  See U.S. Fidelity & Guaranty Co. v. Hendry Corp., 391 F.2d 13, 19 (5th Cir. 1968) ("The most plausible explanation . . . is that the limitation was intended to meet the objections of the surety companies, which expressed the fear that if the single suit provision were eliminated, they would be exposed to a multiplicity of suits, and could possibly be found liable for an amount in excess of the penal sum of the bond"); see also U.S. for Use and Benefit of Harvey Gulf Intern. Marine, Inc. v. Maryland Cas. Co., 573 F.2d 245 (5th Cir. 1978); U.S. for Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966).

Some courts have attempted to parse the legislative history of the statute.  There is a Second Circuit case from 1962 that claims to have summarized the legislative history of the

venue provision, and that "the House Report envisaged separate suits would be brought, and the shift from one to several possible districts reduced the chances that suit could be consolidated," suggesting for our purposes that the provision was intended to be read broadly. U.S. for Use and Benefit of Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 665 (2d Cir. 1962) (citing H.R.Rep. No. 1263, 74th Cong., 1st Sess. 2 (1935)).  But that case can be distinguished since there the contract was intended to be performed in a foreign country—therefore, the Aetna court was forced into making a venue determination in the absence of an appropriate venue under the conditions of the statute.  Furthermore, it appears that the legislative history is all but clear about where the venue provision was intended to localize Miller Act suits—one district court analyzing the legislative history suggested that the provision was intended to keep lawsuits confined to the district where the jobsite was located to protect local subcontractors. U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co., 816 F.Supp.2d 1139, 1160-62 (D.N.M. 2011) (Browning, J.) ("[The Congressional witness] asserted that requiring the laborers and suppliers to pursue an action in a forum other than where the contract was to be performed 'prejudiced the rights of these unpaid subcontractors'") (quoting H.R.Rep. No. 1263, 74th Cong., 1st Sess. 2 (1935) (statement of Edward Cushman, Philadelphia, Pa.)).

A minority of district courts have held that venue is proper if any part of the performance of the contract occurred there. U.S. for the Use and Benefit of Expedia, Inc. v. Altex Enters., Inc., 734 F.Supp. 972 (M.D. Fla. 1990); see also Kudsk v. Bara Infoware, Inc., No. 17-5350, 2019 WL 2775573, at *5 (N.D. Cal. July 2, 2019); U.S. ex rel. Kountry Wood Prods., LLC v. Ohio Farmers Ins. Co., No. 12-0542, 2013 WL 550562 (N.D. Ind. Feb. 12, 2013).  However, those cases are all derived from the reasoning of the Middle District of Florida's Expedia case,

which can be distinguished in the same way as Aetna—the jobsite was located in a foreign country.

Finally, the U.S. Supreme Court determined in F.D. Rich that courts should still take into account principles of judicial economy and prejudice to the parties in determining if a venue is appropriate under the Miller Act. F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 124-25 (1974) (analyzing a version of the provision superseded in 2002); see also Asset Group, Inc. v. Corrugated Erectors, Inc., No. 14-0435, 2015 WL 13719483, at *4 (W.D. Okla. April 15, 2015) ("F.D. Rich teaches that the Supreme Court has used at least some flexibility when interpreting the Miller Act's venue provision, and that factors such as the absence of prejudice and judicial economy may be relevant"). Neither party raises arguments concerning these principles, and in considering these principles in the context of the pleadings the Court finds that neither side will be prejudiced by the Court's decision.

Considering these factors, the Court finds that the view of the majority and that of our sister districts is persuasive, and that the appropriate venue for a Miller Act claim is in the district where the public project's jobsite is located. This ensures that like cases are centralized, provides clear guidance to sureties and subcontractors, and provides a fair venue between the parties in which to litigate. Because this case is only in the early pleading stages, this Court will order that the case be transferred in the interest of justice to the Eastern District of Virginia pursuant to its transfer power under 28 U.S.C. § 1406(a).[2]

The Court does not reach the other elements of Liberty Mutual's Motion to Dismiss.

An appropriate order follows.

---

[2] § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."